**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| TOWER SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FISH ON SPORTS CORPORATION,<br><br>Defendant. | Civil Action No. 23-11931 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon cross-motions for summary judgment. Defendant Fish On Sports Corporation ("Fish On") first filed its Motion for Summary Judgment. (ECF No. 42.) Plaintiff Tower Systems, Inc. ("Tower") opposed (ECF No. 44), and then filed a Cross-Motion for Summary Judgment (ECF No. 48). Fish On simultaneously opposed Tower's Cross-Motion and replied in further support of its own Motion (ECF No. 56), and Tower filed a reply brief in support of its Cross-Motion (ECF No. 61). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Fish On's Motion for Summary Judgment is denied, and Tower's Cross-Motion for Summary Judgment is denied.

## I.    <u>BACKGROUND</u>

The following facts are drawn from the Statement of Undisputed Material Facts ("SUMF") (SUMF, ECF No. 42-5), and Response to the Statement of Undisputed Material Facts ("RSUMF") (RSUMF, ECF No. 46). The facts are, largely, disputed.[1]

Fish On is an Ohio corporation that manufactures and sells recreational fishing and boating products, such as fishing arches and towers. (SUMF ¶ 1.) Since 2008, Fish On has manufactured its fishing arches and towers in the United States. (SUMF ¶¶ 2-3; *contra* RSUMF ¶¶ 2-3.) On Fish On's website, Fish On advertises that its products are made in the United States. (SUMF ¶ 4; *contra* RSUMF ¶ 4.) Fish On contends that its customers have a strong preference for American-made goods, and that Fish On and Tower are direct competitors in the recreational boating and fishing market. (SUMF ¶¶ 6-11, 22; *but see* RSUMF ¶¶ 6-11, 22.) Tower also sells fishing arches and towers, and on its website, markets that its products are made in America. (SUMF ¶¶ 5, 11; RSUMF ¶¶ 5, 11.) Tower registered the trademark "Tower in a Box" in 2008. (Tull Decl. ¶ 13, ECF No. 50.)

In February 2022, Don Kudner ("Kudner"), a Fish On employee, contacted Tower for a competitive quote with respect to its "Tower in a Box" product. (SUMF ¶ 13; *contra* RSUMF ¶ 13; *see also* Kudner Aff. ¶ 7, ECF No. 42-3.) During that conversation, Shelley Golden ("Golden"), a

---

[1] In the Cross-Motion for Summary Judgment, Tower failed to submit a separate document with its counterstatement of undisputed material facts and, instead, incorporated its counterstatements into its brief. For purposes of summary judgment, a "movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine [dispute], in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed . . . . Each statement of material facts shall be a separate document (not part of a brief)[.]" L. Civ. R. 56.1(a). This failure to comply with Local Civil Rule 56.1(a) warrants the denial of Tower's Cross-Motion. *See Bach v. McGinty*, No. 12-5853, 2015 WL 1383945, at *3 (D.N.J. Mar. 25, 2015) (explaining the "failure to provide such a statement [required by Local Civil Rule 56.1(a)] would support the motion's denial.").

Tower employee, represented that Tower's fishing arch is the only arch made in the United States "that ships in a box." (SUMF ¶ 13; Kudner Aff. ¶ 7; *contra* RSUMF ¶ 13.)[2] In March 2023, Golden represented to a prospective customer, by way of e-mail correspondence (the "March 2023 e-mail correspondence") that Fish On's fishing arches were manufactured in China, brought into the United States unfinished, and painted here. (SUMF ¶ 19; RSUMF ¶ 19; *see also* Golden Decl. ¶¶ 6-7, ECF No. 47.)[3] That statement was, however, false. (SUMF ¶ 20; RSUMF ¶ 20; Golden Decl. ¶ 15-17.) The prospective customer who received that statement did not make a purchase from Fish On. (SUMF ¶ 21; *contra* RSUMF ¶ 21; *but see* Golden Decl. ¶ 7 (admitting that individual became a customer of Tower).) Golden admitted to making such a statement at least one other time. (Golden Decl. ¶¶ 9-10.)

Fish On further contends that: (1) in April 2023, a prospective customer informed Kudner that Tower represented that it is the only "arch in a box" company that manufactures its products in the United States; (2) another prospective customer informed Kudner that Tower stated that Fish On copied its design and manufactured its products in China; and (3) Kudner spoke with several other prospective customers at trade shows who advised him that Tower represented that Fish On's products were made in China. (SUMF ¶¶ 14, 16, 18; Kudner Aff. ¶¶ 8-9; *contra* RSUMF ¶¶ 14, 16, 18.) Since 2022, Fish On's sales declined by approximately thirty-seven percent, and Fish On attributed that to Tower's false statements regarding the country of origin of its products. (SUMF ¶¶ 24-26; *contra* RSUMF ¶¶ 24-26.)

---

[2] The parties use "Arch in a Box" and "Tower in a Box" interchangeably. (*See* Golden Decl. ¶ 12; Kudner Aff. ¶¶ 7-8.)

[3] The March 2023 e-mail correspondence is not provided as part of the record. Tower does not dispute that Golden made the statement at issue.

Tower initiated this action on August 28, 2023, by filing a Complaint for declaratory relief because it sought to explore the potential sale of its business and Fish On's threat of litigation would impede such efforts. (*See generally* Compl., ECF No. 1.) In its Complaint, Tower seeks a declaration that the March 2023 e-mail correspondence, as well as the handful of remarks made by Golden, did not constitute trade disparagement under federal, state, local, or common law or otherwise violate Fish On's rights or property interests. (*Id.* ¶¶ 29-31.) Tower additionally seeks a declaration that Golden's false statements regarding Fish On's products were an honest mistake, and that Fish On has suffered no damages as a result of those remarks. (*Id.* ¶¶ 32-36.) Fish On filed its Answer with a Counterclaim on May 17, 2024, asserting causes of action for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, and for deceptive trade practices in violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code § 4165.02, *et seq.*, or in the alternative, the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2, *et seq.* (*See generally* Answer & Counterclaims, ECF No. 15.) Tower filed its Answer to the Counterclaim on June 6, 2024 (Answer to Counterclaims, ECF No. 18), and the parties have been engaging in discovery since that time.[4]

Fish On filed a Motion for Summary Judgment on all counts of its Counterclaim. (*See* Def.'s Not. of Motion, ECF No. 42.) Fish On seeks a permanent injunction against Tower, as well as monetary damages, including treble damages and attorneys' fees. (*See generally* Def.'s Moving Br., ECF No. 55.)[5] Tower filed a consolidated opposition and Cross-Motion for Summary Judgment, seeking dismissal of Fish On's Counterclaim in its entirety, as well as a declaration that

---

[4] Fact discovery is scheduled to conclude on March 31, 2026. (Feb. 18, 2026, Letter Order, ECF No. 64.)

[5] Fish On moved to amend or correct its initial brief, which the Court granted on December 1, 2025. (ECF Nos. 43, 53.)

its statements do not constitute trade disparagement. (*See generally* Pl.'s Cross-Motion, ECF Nos. 44-48.) Fish On thereafter filed a consolidated opposition to the Cross-Motion and a reply in further support of its Motion for Summary Judgment. (Def.'s Opp'n Br., ECF No. 56.) The Magistrate Judge permitted Tower to file a reply brief in further support of its Cross-Motion (Dec. 11, 2025, Text Order, ECF No. 59), which Tower filed on December 20, 2025 (Pl.'s Reply Br. to Cross-Motion, ECF No. 61).

## II.   **LEGAL STANDARD**

### A.   **Summary Judgment**

Federal Rule of Civil Procedure 56(a)[6] provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a summary judgment motion, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

---

[6] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a summary judgment motion, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249-50. Credibility determinations are the province of the fact finder. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III.    **DISCUSSION**

### A.    **Fish On's Lanham Act Claim**

Fish On argues that it is entitled to summary judgment on its Lanham Act claim for false advertising because Tower made multiple "literally false" statements that actually deceived customers and caused a decline in sales. (Def.'s Moving Br. at 8-10.) Before turning to the merits of Fish On's false advertising claim, the Court must examine whether the statements at issue

constitute "commercial advertising or promotion." *See Synthes, Inc. v. Emerge Med. Inc.*, 25 F. Supp. 3d 617, 717 (E.D. Pa. 2014).

The Lanham Act "provide[s] a remedy by way of civil damages or injunction against anyone who[ ] in connection with goods or services in commerce uses a false designation of origin [or] any false description or representation." *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648 (3d Cir. 1958). Section 43(a) of the Lanham Act provides, in pertinent part:

> Any person who, on or in connection with any goods . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). Although the Lanham Act does not define "commercial advertising or promotion," a statement is actionable "commercial advertising or promotion" if it is "(1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purpose of influencing customers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within the industry." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 456 (D.N.J. 2009).

Once a plaintiff demonstrates that the challenged statements are "commercial advertising or promotion," the plaintiff must prove the following five elements to establish liability for false advertising:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to

influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (alteration in original) (citation omitted). The Court begins its analysis by evaluating each statement made by Tower.

A genuine dispute of material fact exists with respect to Golden's February 2022 statement to Kudner because the parties dispute that they are competitors. (SUMF ¶¶ 6-11, 22; *but see* RSUMF ¶¶ 6-11, 22.) If so, then this statement is not actionable because it would be an isolated statement made directly to a competitor. *See Synthes*, 25 F. Supp. 3d at 717 (explaining that "private statements to competitors—without more—falls short of commercial advertising as defined in the Act" (quoting *Pitney Bowes, Inc. v. ITS Mailing Sys. Inc.*, No. 09-5024, 2010 WL 1005146, at *5 (E.D. Pa. Mar. 17, 2010))). An additional dispute of material fact exists because the record is silent as to whether this statement constitutes commercial speech, which is "speech [that] does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66 (1983) (quotations omitted).

Additionally, the several disputed statements made to Kudner by prospective customers are double hearsay, submitted for the truth of the matter asserted that Tower engaged in a campaign to misinform consumers about the origins of Fish On's fishing arch. (*See* SUMF ¶¶ 14-18.) Fish On does not address the admissibility of these statements. The Court will accordingly disregard these statements in connection with the present summary judgment motion. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

The statement made within the March 2023 e-mail correspondence from Golden to a prospective customer is commercial speech. Tower concedes that Golden made this statement as part of her duties as sales personnel, during peak sales season. (Golden Decl. ¶¶ 5-8.) Tower additionally concedes that the individual receiving the statement became a customer of Tower after this communication was made. (*Id.* at ¶ 7.)

A genuine dispute of material fact, however, exists as to whether the statement within the March 2023 e-mail correspondence was sufficiently disseminated to the relevant purchasing public because Tower concedes Golden made the same statement at least one other time.[7] (*Id.* at ¶¶ 9-10.) "[T]he precise boundary at which a statement is considered sufficiently disseminated is heavily fact dependent[.]" *Wakefern Food Corp. v. Marchese*, No. 20-15949, 2021 WL 3783259, at *4 (D.N.J. Aug. 26, 2021). "Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement," as "businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002); *accord Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003) ("To constitute advertising or promotion, commercial speech must at a bare minimum target a class or category of purchasers or potential purchasers, not merely particular individuals."). Fish On does not provide this Court with any evidence about the relevant fishing

---

[7] As previously established, a further dispute of material fact exists regarding whether the parties are, in fact, competitors. (SUMF ¶¶ 6-11, 22; *but see* RSUMF ¶¶ 6-11, 22.)

and recreational boating market to determine whether Tower's statement is "part of an organized campaign to penetrate the relevant market." *Fashion Boutique*, 314 F.3d at 57.

Because disputes of material fact persist, the Court denies summary judgment with respect to Fish On's Lanham Act claim.[8]

### B.    Fish On's State Law Claims

#### 1.    *False Advertising under the ODTPA*

Fish On argues that because it succeeds in demonstrating false advertising under the Lanham Act, it similarly succeeds on its ODTPA claim. (Def.'s Moving Br. at 15-19.)

A false advertising "claim under the ODTPA is treated the same as a claim for false advertising under the Lanham Act." *MicroStar Logistics LLC v. Cavalier Distrib. Co.*, No. 24-647, 2025 WL 815385, at *4 (S.D. Ohio Mar. 14, 2025). Fish On therefore must prove the same elements as its Lanham Act claim. *Compare id.* at *3, *with Pernod*, 653 F.3d at 248. Fish On must additionally demonstrate that the challenged statements meet the same threshold elements to constitute "commercial speech or advertising." *MicroStar*, 2025 WL 815385, at *3; *accord Bracco Diagnostics*, 627 F. Supp. 2d at 456.

Having established that Fish On has not demonstrated its entitlement to summary judgment on its Lanham Act claim, the Court denies summary judgment on Fish On's ODTPA claim for the same reasons.

#### 2.    *False Advertising Under the NJCFA*

Fish On argues that Tower's conduct violates the NJCFA and, as such, it is entitled to the NJCFA's statutory remedies, such as treble damages and attorneys' fees. (Def.'s Moving Br. at

---

[8] Given that discovery is ongoing, the remedy here is, simply, for the parties to continue discovery. *Boandl v. Geithner*, 752 F. Supp. 2d 540, 555 (E.D. Pa. 2010) (The "inability to access facts material to one's case will naturally be remedied by providing . . . additional time to conduct discovery.").

15-17, 19.) The Court, however, finds that Fish On does not have Article III standing to pursue this claim because it has not sustained an ascertainable loss in connection with a consumer transaction.

"A federal court has an independent obligation to examine its own jurisdiction, [and] if the parties fail to raise the issue of standing, it may be addressed by the Court *sua sponte* at any stage of the proceedings." *La. Counseling & Fam. Servs. Inc. v. Mt. Fuji Japanese Rest.*, No. 08-6143, 2011 WL 3273548, at *3 n.3 (D.N.J. July 27, 2011) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990)). A plaintiff must "demonstrate standing for each claim [it] press[es] and for each form of relief" sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). A court cannot "exercise jurisdiction over one claim simply because it arose 'from the same nucleus of operative fact' as another claim." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352(2006)).

To have Article III standing, a plaintiff must demonstrate "(1) an injury-in-fact[;] (2) a sufficient causal connection between the injury and the conduct complained of[;] and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* at 358-59 59 (quotations omitted) (citation omitted). An injury-in-fact requires that the plaintiff suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

"Both federal law and state law—including state statutes—'can create interests that support standing in federal courts.'" *Cottrell v. Alcon Labs.*, 874 F.3d 154, 164 (3d Cir. 2017) (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) (internal citations omitted)). The NJCFA "provides for relief to consumers who have been harmed by fraudulent practices in the marketplace by making the use of those practices 'unlawful.'" *Robey v. SPARC Grp. LLC*,

311 A.3d 463, 470-71 (N.J. 2024) (quoting *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 440 (N.J. 2004)). The New Jersey Supreme Court has "interpreted the [NJ]CFA to protect against three forms of unlawful practices: 'knowing misrepresentations, omissions of material fact, and violations of administrative regulations.'" *Id.* at 471 (quoting *Furst*, 860 A.2d at 440). The NJCFA confers a private right of action upon individuals who are injured by practices deemed unlawful by the statute:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act or practice declared unlawful under this act . . . may bring an action . . . . In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest.

N.J. Stat. Ann. § 56:8-19. Entitlement to relief under the NJCFA requires the plaintiff to demonstrate "an unlawful practice, an ascertainable loss, and a causal relationship between the two." *Robey*, 311 A.3d at 471. An ascertainable loss refers specifically to a loss of "moneys or property, real or personal" and it is defined as a loss that is "quantifiable or measurable, not hypothetical or illusory." *Id.* (internal quotation marks and citations omitted). A private plaintiff therefore "needs to demonstrate a cognizable and calculable claim of loss due to the alleged [NJ]CFA violation" with a "reasonable degree of certainty." *Id.* (citations omitted). "[A]n immediate, out-of-pocket loss" is sufficient. *Id.*

Here, as Fish On recognizes, commercial competitors who do not suffer consumer-like, out-of-pocket losses lack standing to sue under the NJCFA. *See Merk & Co., Inc. v. KGAA*, No. 16-266, 2022 WL 19521725, at *12 (D.N.J. Sep. 30, 2022) (finding a competitor lacked standing to bring a claim under the NJCFA because it did not "engage[ ] in a 'consumer oriented' transaction . . . for the products or services featured in the advertisements alleged to be deceptive");

*Creditors Relief LLC v. United Debt Settlement LLC*, No. 17-7474, 2019 WL 7288978, at *9 (D.N.J. Dec. 30, 2019) (same); *Interlink Prods. Int'l, Inc. v. Cathy Trading, LLC*, No. 16-2153, 2017 WL 931712, *2 (D.N.J. Mar. 9, 2017) (collecting cases). Because Fish On neither pleads in its Counterclaim nor submits evidence in connection with its Motion for Summary Judgment that it sustained an ascertainable loss in connection with a consumer transaction due to Tower's allegedly false advertising, it fails to demonstrate that it sustained an injury-in-fact for purposes of Article III standing with respect to its NJCFA claim. *Finkelman v. Nat. Football League,* 810 F.3d 187, 195 (3d Cir. 2016) (affirming the Distrct Court's conclusion that plaintiff lacked Article III to pursue a NJCFA claim because "he suffered no out-of-pocket loss and, in the District Court's view, no injury-in-fact"); *TransUnion*, 594 U.S. at 431 (noting that plaintiffs must demonstrate standing for each claim pursued).

The Court therefore dismisses Fish On's NJCFA claim for want of standing.[9]

## IV.    **CONCLUSION**

For the foregoing reasons, the Court denies Fish On's Motion for Summary Judgment and denies Tower's Cross-Motion for Summary Judgment. The Court will issue an order consistent with this Memorandum Opinion.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: April _____8ᵀᴴ____, 2026

_____
[9] The Court does not address Fish On's remaining arguments.